IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| COY BERRY | § | |
|     TDCJ-CID NO. 1174796 | § | |
| v. | § | C.A. NO. C-09-003 |
| | § | |
| DR. JAMES M. FITTS, ET AL. | § | |

## MEMORANDUM AND RECOMMENDATION TO
## GRANT DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

In this prisoner civil rights action, plaintiff Coy Berry is suing Dr. James Fitts, a medical provider formerly employed at the McConnell Unit, and William Burgin, the McConnell Unit medical administrator, alleging that they were deliberately indifferent to his serious medical needs when they denied him narcotic pain medication, despite the fact that another physician had specifically prescribed the medication.  Dr. Fitts and Mr. Burgin have each filed a motion for summary judgment on the grounds that plaintiff has failed to state an actionable constitutional violation and that he is entitled to qualified immunity.  (D.E. 38, 39). Plaintiff has filed a response in opposition.  (D.E. 46).

For the reasons stated herein, it is respectfully recommended that the Court grant the summary judgment motions in favor of defendants, and that plaintiff's claims herein be dismissed with prejudice.

# I.  JURISDICTION

The Court has federal question jurisdiction.  28 U.S.C. § 1331.

# II.  PROCEDURAL BACKGROUND

Plaintiff is an inmate in the Texas Department of Criminal Justice ("TDCJ"), Correctional Institutions Division, and is currently confined at the McConnell Unit in Beeville, Texas.  He filed this lawsuit on January 8, 2009, complaining that Dr. Fitts was deliberately indifferent to his serious medical needs when he denied him Tylenol #3, and that Mr. Burgin was deliberately indifferent because he failed to respond promptly to his I-60 complaints regarding the medication issue, and also, that he denied his grievances regarding Dr. Fitts' denial of narcotic pain medication.  (D.E. 1).  In addition, plaintiff claimed that Dr. Fitts denied him the stronger pain medication in retaliation for grievances he has filed against him in the past.  Id.

A Spears[1] hearing was held on January 23, 2009, following which service was ordered on both Dr. Fitts and Mr. Burgin.  (D.E. 8).  On February 19, 2009, defendants filed their answer, and each raised the defense of qualified immunity. (D.E. 10).

---

[1] Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985); see also Eason v. Holt, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a Spears hearing is incorporated into the pleadings).

On June 28, 2009, Dr. Fitts filed his motion for summary judgment, (D.E. 38), and on June 30, 2009, defendant Burgin filed his summary judgment motion. (D.E. 39).  On August 28, 2009, plaintiff filed his response in opposition to defendants' motions.  (D.E. 46).

### III.  SUMMARY JUDGMENT EVIDENCE

In support of his motion for summary judgment, Dr. Fitts offers:

Ex. A:      Affidavit of Dr. Fitts;

Ex. B:      Affidavit of Dr. Thomas Tanous;

Ex. C:      Affidavit of Dr. Maximiliano Herrera;

Ex. D:      Portions of plaintiff's medical records; and

Ex. E:      Portions of plaintiff's grievance records.

(D.E. 38).

In support of his motion for summary judgment, Mr. Burgin offers: (1) his own affidavit; (2) a copy of plaintiff's Grievance No. 2008082689; (3) a copy of plaintiff's Grievance No. 2008086912; (4) the affidavit of Mr. Craig Peters, the Beaumont District Operations Manager for the University of Texas Medical Branch – Correctional Managed Care, and relevant portions of plaintiff's medical records.  (D.E. 39).

With his summary judgment response, plaintiff offers sixty pages of I-60 requests, grievances, and correspondence with the Texas Medical Board concerning his complaints against Dr. Fitts.  (D.E. 46, Attach. at 1-60).[2]

The uncontested evidence establishes the following:

## A.    Plaintiff's Medical Claims.

Beginning in August 2007, plaintiff began complaining of left leg edema and pain, and he requested that he be prescribed medical boots.  (D.E. 46, Attach. at 1-2).  He believed Dr. Fitts to be unresponsive to his needs, and on September 12, 2007, he filed a Step 1 grievance asking what criteria needed to be met to obtain medical boots.  Id. at 5-6.  On October 18, 2007, Mr. Burgin responded that the brace and limb department had refused his request for medical boots.  Id. at 6. He related that plaintiff's orthopedic surgeon at Hospital Galveston **had** recommended the boots to the TDCJ's Correctional Managed Care, but it denied the request noting that plaintiff was scheduled for back surgery.  Id.

On January 24, 2008, plaintiff met with Dr. Thomas Tanous, an orthopedic surgeon at Hospital Galveston, via tele-med for his complaints of chronic lower back pain with left leg extremity radiculopathy.  (D.E. 38, Ex. D at 1-3).  Dr. Tanous opined that plaintiff's "pain was most likely secondary to pressure existing

---

[2] Most of these documents also are filed with defendants' motions.

at the exit site of one of the nerves in his lower back."  (D.E. 38, Ex. C) (Tanous

Aff. at ¶ 2).  He recommended surgery to alleviate the pressure in that area.  Id. at ¶

3.  He noted in plaintiff's file that a follow-up appointment with the Orthopedic

Spine Clinic at Hospital Galveston should be made "at the next available"

opportunity.  (D.E. 38, Ex. D at 3).  The back surgery was not scheduled at the

January 24, 2008 visit.  (D.E. 38, Ex. C) (Tanous Aff. at ¶ 4).

At the January 24, 2008 tele-med appointment, Dr. Tanous prescribed

plaintiff Nortriptyline and Tylenol #3 for pain management.  (D.E. 38, Ex. D at 3).

In addition, Dr. Tanous told plaintiff that he could not take Ibuprofen prior to back

surgery because it could work as a blood thinner.  (D.E. 46, at 1).

Dr. Fitts was the McConnell Unit primary care physician at the time plaintiff

was seen by Dr. Tanous.  (D.E. 38, Ex. A) (Fitts Aff. at ¶ 3).  After reviewing Dr.

Tanous' recommendation, Dr. Fitts declined to prescribe Tylenol #3 because the

back surgery was not yet scheduled.  Id. at ¶ 7.  In addition, Dr. Fitts decided

Tylenol #3 was not the appropriate medication at this time because:

(1) Nonsteroid Anti-Inflammatory Drugs, such as Ibuprofen, are an acceptable

form of pain relief and had proven effective in controlling plaintiff's pain; (2)

Tylenol #3 is a narcotic which possesses significant risks if taken for prolonged

periods of time, especially for individuals with a history of drug or alcohol

5

addiction,[3] and it would not have been necessary or prudent for plaintiff to have taken Tylenol #3 until the April 21, 2008 surgery date; and (3) although Ibuprofen has an anti-platelet action that makes it desirable to discontinue perhaps three days prior to scheduled surgery, the anticoagulative effect is not so strong that surgery would necessarily be cancelled if it were taken before surgery.  Id. at ¶¶ 6-8.

On February 21, 2008, plaintiff reported to the infirmary with complaints of back pain.  (D.E. 38, Ex. D at 10).  He was advised that a request for him to be evaluated by the Orthopedic Spine Specialty Clinic for surgery had already been submitted, and that an appointment was scheduled for the first week of April 2008. Id.

On February 29, 2008, plaintiff reported to the infirmary complaining of edema and requesting a diuretic.  (D.E. 38, Ex. D at 13).  Dr. Fitts noted that plaintiff was ambulatory with only a "trace" of edema.  Id.  Plaintiff was not given a specific medication at that time, but was continued on the numerous medications

---

[3] Plaintiff has a history of drug abuse.  (D.E. 38, Ex. A) (Fitts Aff. at ¶ 5).

6

he was currently taking.[4]  (D.E. 38, Ex. D at 12).  During this visit, plaintiff did not complain of lower back pain.  Id. at 13.

On March 13, 2008, plaintiff reported to the infirmary for a follow-up appointment concerning his hypothyroid and irregular rhythm.  Id. at 14. Physician's Assistant Flynn reviewed plaintiff's lab reports with him, and counseled him to exercise, lose weight, and reduce his salt.  Id.  Plaintiff's heart rate was normal, but he was scheduled for an appointment with a cardiologist on March 26, 2008.  Id.  Plaintiff did not complain of pain.  Id.

On April 3, 2008, plaintiff was seen at the Orthopedic Spine Specialty Clinic in Galveston.  Id. at 20-21.  He reported low back pain, pain in his left leg, and a pain level of 7 on a scale of 1 to 10.  Id. at 20.  The examining physician noted that surgery would be scheduled in two weeks, and he charted that plaintiff was to cease any Nonsteroid Anti-Inflammatory Drugs and to take Tylenol #3 for pain management.  Id. at 21.  Plaintiff was transported back to the McConnell Unit, and his surgery date was scheduled.  Id. at 23.

---

[4] Dr. Fitts testified that, at the time of the incidents forming the basis of this lawsuit, plaintiff was being treated for a variety of ailments, including: asthma, esophageal reflux; hyperlipidemia, hypertension, a seizure disorder, hypoglycemia, hypothyroidism, and bipolar and major depressive disorders, and occasionally, an atrial fibrillation.  (D.E. 38, Ex. A) (Fitts Aff. at ¶ 5).  He was taking numerous medication, including: albuterol and triamcinolone inhalers; omeprazole, lovastatin, enalapril, hydrochlorthiazide, metroprolol, valporic acid, levothyroxine, fluoxetine and nortriptyline.  Id.

On  April 4, 2008, plaintiff reported to the infirmary stating that he was scheduled for back surgery in two weeks and needed pain medication.  Id. at 24. Dr. Fitts ordered Tylenol #3 twice a day for seven days, and Robaxin, and plaintiff was issued passes to report to the infirmary twice a day for medicine distribution. Id. at 30-31.  Plaintiff was instructed to return on April 11, 2008 for evaluation of his pain management.  Id. at 24.  On April 11, 2008, Dr. Fitts renewed plaintiff's prescription for Tylenol #3 for an additional seven days.  Id. at 35.

On April 21, 2008, plaintiff underwent back surgery consisting of hemilaminectomy, partial facetectomy, foraminotomy, and decompression with diskectomy, at left L4-L5 and left L5-S1.  Id. at 42-45.  The week following his back surgery, plaintiff was prescribed Tylenol #3, two tablets, twice a day, for seven days.  Id. at 50.

**B.      Plaintiff's History Of Grievances.**

On January 24, 2008, plaintiff filed a Step 1 grievance, Grievance No. 2008082689, complaining that on January 16, 2008, he had an appointment to see Ms. Flynn, a physician's assistant, but instead, he was seen by Dr. Fitts.  (D.E. 39, App. at 7-8).  During the appointment, Dr. Fitts called Ms. Flynn into the room and told her that she was not to see plaintiff again, but refer plaintiff to him anytime he came to medical because he had so many pending medical issues.  Id. at 7.  Dr.

8

Fitts then discontinued medication that PA Flynn had prescribed.  Id.  Plaintiff

complained that Dr. Fitts' actions were in retaliation for complaints and grievances

that he had previously filed against Dr. Fitts.  (D.E. 46, at 5-6, 11, 13, 25).

Mr. Burgin denied Grievance No. 2008082689, explaining that he could not

determine which medical provider administered his care:

> You do not have the option or privilege to decide or
> request specific providers.  Based upon the number
> variety of specialty clinic referrals, Dr. Fitts has been
> supporting your medical needs.  You have been seen by a
> medical doctor.  There has been no retaliation against you
> from anyone in medical.

(D.E. 39, App. at 8).  Plaintiff appealed Grievance No. 2008082689 in a Step 2

grievance, and it was also denied.  Id. at 5-6.

On February 2, 2008, plaintiff filed another Step 1 grievance, Grievance No.

2008086912, complaining that Dr. Fitts would not prescribe him Tylenol #3, and

that defendant Burgin would not intervene on his behalf or even answer his I-60s.

Id. at 11-12.  An investigation was initiated that same day.  Id. at 14-15.  In

response to a written inquiry, Dr. Fitts told officials that he could "not prescribe

narcotic pain relief on a sustained basis in our correctional setting."  Id. at 15.

Thereafter, on March 5, 2008, defendant Burgin denied plaintiff's Grievance No.

2008086912, explaining that Tylenol #3 is not authorized:

> You have a prescription for Ibuprofen 800 mg. 3X per
> day.  Tylenol 3 is a narcotic and is not authorized on this
> unit.  The best that can be done is the Ibuprofen.  Your
> not taking the Ibuprofen is your choice.

Id. at 13.  On March 18, 2008, plaintiff filed a Step 2 appeal of Grievance No.

2008086912.  Id. at 9-10.  He explained that the orthopedic surgeon had told him

not to take Ibuprofen, but that Dr. Fitts and defendant refused to provide him with

an alternative pain medication.  Id.

A health services investigation was conducted.  Id. at 31-32.  On March 27,

2007, Guy Smith, a Program Administrator, denied plaintiff's Step 2 appeal,

addressing his pain management history and explaining that he was not entitled to

receive a specific medication:

> Health care at the McConnell Facility is provided by
> University of Texas Medical Branch.  Facility health care
> providers are the primary care providers.  Before
> becoming a valid medical order, the recommendations of
> the specialist are either accepted, rejected, or modified by
> the facility level provider.  Review of medical records
> reveals that a health care provider assisted you for a
> complaint of right shoulder and clavicular pain on
> 08/21/2007, at which time Nortriptyline 25 milligrams
> was prescribed for thirty days with five automatic refills.
> In addition, Ibuprofen 800 milligram tablets were ordered
> for thirty days.  A new order for Ibuprofen was written
> with two automatic refills in response to a Sick Call
> Request for a complaint of back pain on 12/14/2007.
> Review of medical records reveals that on 01/24/2008, a
> health care provider accessed you through a CYB-R Care
> Ortho Spine consult for lower back pain with lower left

10

extremity radiculopathy for which recommendations
included Nortriptyline and Tylenol #3 for pain
management.  Additionally, you were scheduled to be
seen through an Ortho Spine Hospital Galveston
Specialty clinic.  Prescriptions for Nortriptyline and
Ibuprofen expired 03/10/2008 and 03/13/2008.  No
additional Sick Call Requests were identified during the
course of this investigation for additional pain
management.  You may request assessment for pain.
However, you may not dictate, nor are you afforded the
choice of which medication will be prescribed.  The
determination of surgical intervention will be made
during the Ortho Spine encounter, which is scheduled for
April 2008.  Medications will be reviewed by the health
care provider at that time to ensure continuity of care.
No further action is required through the grievance
mechanism.

(D.E. 39, App. at 10).

## IV.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper if there is no genuine issue as to any material

fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ.

P. 56(c).  A genuine issue exists "if the evidence is such that a reasonable jury

could return a verdict for the nonmoving party."  <u>Anderson v. Liberty Lobby, Inc.</u>,

477 U.S. 242, 248 (1986).  The Court must examine "whether the evidence

presents a sufficient disagreement to require submission to a jury or whether it is so

one-sided that one party must prevail as a matter of law."  <u>Id.</u> at 251-52.  In making

this determination, the Court must consider the record as a whole by reviewing all

pleadings, depositions, affidavits and admissions on file, and drawing all justifiable

inferences in favor of the party opposing the motion.  Caboni v. Gen. Motors

Corp., 278 F.3d 448, 451 (5th Cir. 2002).  The Court may not weigh the evidence,

or evaluate the credibility of witnesses.  Id.  Furthermore, "affidavits shall be made

on personal knowledge, shall set forth such facts as would be admissible in

evidence, and shall show affirmatively that the affiant is competent to testify to the

matters stated therein."  Fed. R. Civ. P. 56(e); see also Cormier v. Pennzoil

Exploration & Prod. Co., 969 F.2d 1559, 1561 (5th Cir. 1992) (per curiam)

(refusing to consider affidavits that relied on hearsay statements); Martin v. John

W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987) (per curiam) (stating

that courts cannot consider hearsay evidence in affidavits and depositions).

Unauthenticated and unverified documents do not constitute proper summary

judgment evidence.  King v. Dogan, 31 F.3d 344, 346 (5th Cir. 1994) (per curiam).

The moving party bears the initial burden of showing the absence of a

genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party demonstrates an absence of evidence supporting the

nonmoving party's case, then the burden shifts to the nonmoving party to come

forward with specific facts showing that a genuine issue for trial does exist.

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  To

sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings.  Fed. R. Civ. P. 56(e); <u>Anderson</u>, 477 U.S. at 248.  "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted."  <u>Caboni</u>, 278 F.3d at 451.  "If reasonable minds could differ as to the import of the evidence ... a verdict should not be directed."  <u>Anderson</u>, 477 U.S. at 250-51.

The Fifth Circuit has established that "[t]he plaintiff bears the burden of proving that a government official is not entitled to qualified immunity."  <u>Michalik v. Hermann</u>, 422 F.3d 252, 258 (5th Cir. 2005) (citation omitted).  Thus, the standard summary judgment burden of proof is shifted in the case of a qualified immunity defense.  <u>Id.</u> at 262 (citation omitted).  When a government official has pleaded the defense of qualified immunity, the burden is on the plaintiff to "rebut the defense by establishing that the [official's] allegedly wrongful conduct violated clearly established law."  <u>Id.</u> (citation omitted).  "The plaintiff bears the burden of negating the defense and cannot rest on conclusory allegations and assertions but must demonstrate genuine issues of material fact regarding the reasonableness of the [official's] conduct."  <u>Id.</u> (citation omitted).

# V.  DISCUSSION

Plaintiff is suing defendants in their individual capacities for deliberate indifference to his serious medical needs.  He claims also that Dr. Fitts refused to prescribe him Tylenol #3 in retaliation for his having filing grievances and complaints against him in the past.  Finally, he claims that Mr. Burgin failed to investigate, or answer his grievances properly.

## A.    Defendants Are Entitled To Qualified Immunity.

Both defendants move for summary judgment on the grounds of qualified immunity.

The doctrine of qualified immunity affords protection against individual liability for civil damages to officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. __, 129 S. Ct. 808, 815 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  When a defendant invokes the defense of qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam) (citation omitted).  "To discharge this burden, a plaintiff must satisfy a two-prong test." Atteberry v. Nocana Gen. Hosp., 430 F.3d 245, 253 (5th Cir. 2005).  "First, he must claim that

14

the defendants committed a constitutional violation under current law."  Id.

(citations omitted).  "Second, he must claim that defendants' actions were

objectively unreasonable in light of the law that was clearly established at the time

of the actions complained of."  Id.

While it will often be appropriate to conduct the qualified immunity analysis

by first determining whether a constitutional violation occurred and then

determining whether the constitutional right was clearly established, that ordering

of the analytical steps is no longer mandatory.  Pearson, 555 U.S. at __, 129 S. Ct.

at 818 (receding from Saucier v. Katz, 533 U.S. 194 (2001)).

### 1.      Step 1 – constitutional violation.

The Eighth Amendment imposes a duty on prison officials to "provide

humane conditions of confinement; prison officials must ensure that inmates

receive adequate food, clothing, shelter, and medical care, and must take

reasonable measures to guarantee the safety of the inmates."  Farmer v. Brennan,

511 U.S. 825, 832 (1994) (internal quotation omitted).  A prison official violates

this duty when by act or omission he is deliberately indifferent to prison conditions

which pose a substantial risk of serious harm.  Id. at 834.

In order to state a § 1983 claim for denial of adequate medical treatment, a

prisoner must allege the officials acted with deliberate indifference to serious

medical needs.  Wilson v. Seiter, 501 U.S. 294, 303 (1991); Estelle v. Gamble, 429 U.S. 97, 105 (1976); Varnado v. Lynaugh, 920 F.2d 320, 321 (5th Cir. 1991). Deliberate indifference encompasses more than mere negligence on the part of prison officials.  Farmer, 511 U.S. at 835.  It requires that prison officials be both aware of specific facts from which the inference could be drawn that a serious medical need exists and then the prison official, perceiving the risk, must deliberately fail to act.  Id. at 837.

Furthermore, negligent medical care does not constitute a valid § 1983 claim.  Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993); see also Graves v. Hampton, 1 F.3d 315, 319 (5th Cir. 1993) ("It is well established that negligent or erroneous medical treatment or judgment does not provide a basis for a § 1983 claim.").  As long as prison medical personnel exercise professional medical judgment, their behavior will not violate a prisoner's constitutional rights. Youngberg v. Romeo, 457 U.S. 307, 322-23 (1982).

Finally, active treatment of a prisoner's serious medical condition does not constitute deliberate indifference, even if treatment is negligently administered. See Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999); Mendoza, 989 F.2d at 195; Varnado, 920 F.2d at 321.  "Deliberate indifference is an "extremely high

standard to meet." <u>Domino v. Texas Dep't of Criminal Justice</u>, 239 F.3d 752, 756 (5th Cir. 2001).

> ### a.   Plaintiff's denial of medical care claim against Dr. Fitts.

Plaintiff claims that Dr. Fitts was deliberately indifferent to his serious medical needs because he refused to prescribe him Tylenol #3, even though Dr. Tanous had done so.

It is apparent from the summary judgment evidence that, on January 24, 2008, plaintiff and Dr. Fitts possessed different information.  Plaintiff believed that his back surgery was to take place in two or three weeks, and therefore, that he should cease taking Ibuprofen due to its anticoagulative effects.  However, Dr. Fitts knew that the back surgery was not yet scheduled, and as such, that plaintiff could continue on the Ibuprofen until closer to the surgery date.  Indeed, Dr. Fitts determined that it would be inappropriate for plaintiff to take Tylenol #3 in advance of a yet unscheduled surgery due to his past drug abuse, the addictive nature of Tylenol #3, and the fact that Ibuprofen had adequately controlled his pain to date.  (D.E. 38, Ex. A) (Fitts Aff. at ¶¶ 6-9).

Additionally, Dr. Tanous testified that, had he known plaintiff's surgery was not going to occur until four months following the January 24, 2008 visit, he would not have recommended Tylenol #3 either.  (D.E. 38, Ex. B) (Tanous Aff. at ¶ 4).

In fact, he reaches the same decision as Dr. Fitts: "In Mr. Berry's case, given the four-month wait for surgery, the risks of taking Tylenol #3 would have outweighed its benefits during the time that surgery was not imminent." Id. at ¶ 5.

Dr. Fitts also offers the affidavit of Dr. Herrera, University of Texas Medical Branch-Correctional Managed Care Medical Director for the San Antonio District, who has reviewed plaintiff's medical records and the course of treatment administered by Dr. Fitts. (D.E. 38, Ex. C) (Herrera Aff.). Dr. Herrera opines that the combination of Ibuprofen and Nortriptyline was appropriate to control plaintiff's pain while avoiding the potential negative side-effects of Tylenol #3. Id. at ¶ 7. He also notes that, with the Ibuprofen, plaintiff was able to keep this medication on his person such that he could administer it as needed, while with Tylenol #3, he could only receive it as prescribed and administered under the direct observation of prison personnel. Id. at ¶ 8. Dr. Herrera concludes that Dr. Fitts provided plaintiff with appropriate care:

> After Mr. Berry's back surgery was scheduled, Tylenol #3 was ordered on April 4, 2008, which was almost three weeks prior to his back surgery. Since Ibuprofen was not ordered at this time, the possible side effect of excessive bleeding during surgery was avoided.
>
> In my opinion, Mr. Berry received reasonable and appropriate medical care for control of his back pain months before, weeks before, and following his back surgery.

Id. at ¶¶ 11, 12.

The basis of plaintiff's claims of deliberate indifference against Dr. Fitts was that the pain medication available to him, Ibuprofen and Nortriptyline, were not safe three months prior to surgery.  However, the summary judgment evidence squarely refutes this argument.  Ibuprofen is only contra-indicated shortly before back surgery, which in Dr. Tanous' opinion means two to three weeks before the procedure.  (D.E. 38, Ex. D) (Tanous Aff. at ¶4).  The Ibuprofen was discontinued April 4, 2008, and Tylenol #3 then prescribed, with the surgery taking place on April 21, 2008.  Moreover, the surgery proceeded without any complication.  (D.E. 38, Ex. D at 42-45).

At most, plaintiff's claim against Dr. Fitts amounts to a disagreement in the course of treatment he received, which is not actionable.  Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 2001) (prisoner's mere disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs) (citations omitted).  Thus, plaintiff fails to state a constitutional violation against Dr. Fitts because he fails to establish that Dr. Fitts was aware of a serious risk of harm to his serious medical needs, yet ignored that risk.

**b.      Plaintiff's denial of medical care claim against Mr. Burgin.**

Plaintiff claims that in January 2008, Dr. Tanous told him he was being scheduled for surgery and not to take Ibuprofen because it could interfere with the surgery.  (D.E. 39, App. at 9-10).  He claims that he informed Dr. Fitts that he needed to take Tylenol #3 for pain rather than Ibuprofen, but that Dr. Fitts refused to make the substitution.  Id.  Plaintiff states that, when he grieved the issue, Mr. Burgin ignored his concerns and told him Tylenol #3 was not authorized on the unit.

Assuming plaintiff's allegations as true – that Mr. Burgin affirmed the refusal by Dr. Fitts to prescribe Tylenol #3 for pain management – this claim also amounts to no more than a mere disagreement with the course of treatment provided, and not deliberate indifference.  Dimazana, 122 F.3d at 292; see also Baez v. I.N.S., No. 06-30112, 2007 WL 2438311, at *2 (5th Cir. Aug. 22, 2007) (per curiam) (unpublished) (substitution of non-narcotic pain prescription because of prison policy prohibiting narcotics fails to state deliberate indifference); Williams v. Bearry, No. 00-60731, 2001 WL 1085197, at *3 (5th Cir. Sept. 7, 2001) (per curiam) (unpublished) (prison doctor is a primary physician and not required to follow consulting surgeon's exact regimen); Thomas v. Seago, No. G-05-0431, 2009 WL 242311, at *7-8 (S.D. Tex. Jan. 30, 2009) (unpublished)

(substitution of non-narcotic medication for Tylenol #3 by unit doctor due to the fact narcotics cannot be kept on person is not deliberate indifference); <u>Laws v. Lawson</u>, No. H-07-3072, 2008 WL 4414371, at *3 (S.D. Tex. Aug. 23, 2008) (unpublished) (disagreement about appropriateness of Ibuprofen for medical condition does not state a claim of deliberate indifference).

Moreover, it is uncontested that, once plaintiff had an ***actual*** surgery date scheduled, Dr. Fitts ***did*** substitute Tylenol #3 in place of the Ibuprofen, almost three weeks in advance of the surgery. (D.E. 39, App., at 1, 2, 36-47). Thus, plaintiff fails to establish that Mr. Burgin's concurrence with the course of treatment ordered by Dr. Fitts amounted to deliberate indifference.

Defendant Burgin points out further that, even if he had wanted plaintiff to receive Tylenol #3 for pain management, as the unit practice manager, he had no authority to prescribe medication. (D.E. 39, App. at 1-3) (Burgin Aff. at ¶ 4). Only licensed health care providers are authorized to prescribe medications. <u>Id.</u> Mr. Craig Peters, a University of Texas Medical Branch operations manger for the Beaumont District, confirmed that Mr. Burgin could not prescribe any medication. (D.E. 39, App. at 34-35) (Peters Aff. at ¶ 4). Mr. Peters testifies that a unit practice manager such as Mr. Burgin is not a direct care provider, and does not get involved in giving clinical advice or diagnoses. <u>Id.</u> at ¶ 3. The practice manager responds to

grievances in addition to other responsibilities of daily operations.  Id. at ¶ 4.  Mr.

Peters testifies that Mr. Burgin's response to Grievance No. 2008086912, stating

that Tylenol #3 was not authorized on the unit, after researching the issue on hand,

was reasonable even though he could have provided more detail.  Id. at ¶¶ 6-7.

In his affidavit, Mr. Burgin explains that, before he answered plaintiff's

Grievance No. 2008086912, he investigated the claim and was told by Dr. Fitts that

Tylenol #3 is generally not prescribed on the McConnell Unit.  (D.E. 39, App. at 1-

3) (Burgin Aff. at ¶ 5).  Tylenol #3 is narcotic, addictive, and subject to illicit use.

Id.  Narcotics must be administered by medical staff under direct observation, and

as such, it is not as accessible to the inmate as other medications that inmates may

keep on their person.  Id.

Once defendant Burgin had the explanation by Dr. Fitts for not prescribing

Tylenol #3, and knowing that plaintiff did in fact have access to Ibuprofen for pain,

Burgin responded to plaintiff's grievance stating that Ibuprofen was the best that

could be done unless authorized by the unit doctor.  Id. at ¶ 4.  Moreover, despite

plaintiff's fear concerning Ibuprofen before surgery, he was not scheduled for

surgery at the time he filed the February 2, 2008 grievance, Grievance No.

2008086912.  (D.E. 39, App. at 11-12).  Indeed, he did not have back surgery until

April 2008, and he received Tylenol #3 for pain for almost three weeks prior to surgery.

The Fifth Circuit has explained "that the facts underlying a claim of 'deliberate indifference' must *clearly evince* the medical need in question and the alleged official dereliction." Johnson v. Treon, 759 F.2d 1236, 1238 (5th Cir. 1985) (emphasis in original) (citation omitted). "The legal conclusion of 'deliberate indifference' ... must rest on facts clearly evincing 'wanton' actions on the part of the defendants." Id.

Plaintiff does not suggest that the Ibuprofen combined with Nortriptyline did not manage his pain. His concern was that he could not have Ibuprofen prior to his surgery, and indeed, his pain medication was changed to Tylenol #3 prior to surgery. (D.E. 46, at 2). As such, there is no evidence that Mr. Burgin was aware of a serious risk to plaintiff's health, yet ignored that risk. Accordingly, plaintiff fails to state a constitutional violation, and Mr. Burgin is entitled to summary judgment in his favor.

## 2.    Step 2 – objective reasonableness.

Because plaintiff has failed to state a constitutional violation as to Dr. Fitts or Mr. Burgin, the Court need not examine whether defendants' actions were reasonable. See Saucier, 533 U.S. at 201 (if the facts alleged do not establish that

the officer's conduct violated a constitutional right, then the qualified immunity

analysis need proceed no further and qualified immunity is appropriate).  It is

respectfully recommended that Dr. Fitts and Mr. Burgin be granted summary

judgment in each defendant's favor on plaintiff's claims of deliberate indifference

to serious medical needs.

**B.      Plaintiff's Retaliation Claim Against Dr. Fitts Is Without Merit.**

Plaintiff maintains that Dr. Fitts refused to prescribe him Tylenol #3 on

January 28, 2008 in retaliation for grievances that he had filed against him in the

past.

To state a valid § 1983 claim for retaliation, "a prisoner must allege (1) a

specific constitutional right, (2) the defendant's intent to retaliate against the

prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4)

causation."  Jones v. Greninger, 188 F.3d 322, 324-25 (5th Cir. 1999) (per curiam)

(citing McDonald v. Stewart, 132 F.3d 225, 231 (5th Cir. 1998)).  To establish

causation, the adverse act must not have occurred but for the retaliatory motive.

McDonald, 132 F.3d at 231 (citing Johnson v. Rodriguez, 110 F.3d 299, 310 (5th

Cir. 1997)).  An inmate must allege more than his personal belief that he is the

victim of retaliation.  Johnson, 110 F.3d at 310 (citation omitted).  "Mere

conclusory allegations of retaliation will not withstand a summary judgment

24

challenge." Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995) (citation omitted). The Fifth Circuit has explained that an "inmate must produce direct evidence of motivation or, the more probable scenario, 'allege a chronology of events from which retaliation may be plausibly inferred.'" Id. (citation omitted).

The purpose of allowing retaliation claims under § 1983 is to ensure that prisoners are not unduly discouraged from exercising their constitutional rights. Morris v. Powell, 449 F.3d 682, 686 (5th Cir. 2006) (citing Crawford-El v. Britton, 523 U.S. 574, 588 n.10 (1998)). However, some acts, even though they may be motivated by retaliatory intent, are so *de minimis* that they would not deter the ordinary person from further exercise of his rights. Id. Such acts do not rise to the level of constitutional violations and cannot form the basis of a § 1983 claim. Id. For example, a job transfer from the commissary to the kitchen might be *de minimis*, while a transfer to a more dangerous unit might constitute an adverse retaliatory act. Id. at 687.

Thus, to prevail on his retaliation claim against Dr. Fitts, plaintiff must establish that: (1) Dr. Fitts had retaliatory intent based on plaintiff exercising his First Amendment right of filing grievances; (2) the retaliatory act was more than inconsequential or *de minimis*, and was capable of deterring a person of ordinary firmness from further exercising his constitutional rights; and, (3) but for the

25

retaliatory motive, the adverse action would not have occurred.  <u>McDonald</u>, 132 F.3d at 231.

Plaintiff complains that Dr. Fitts refused to provide him Tylenol #3 as a way to punish him for filing grievances against him in the past.  However, the summary judgment evidence establishes that Tylenol #3 would not have been an appropriate medication to prescribe four months outside of surgery.  (D.E. 38, Ex. B) (Tanous Aff. at ¶¶4-5); (D.E. 38, Ex. C) (Herrera Aff. at ¶¶ 11-12).  Indeed, the Ibuprofen and Nortriptyline were the more appropriate pain management, and plaintiff suffered no ill consequence from the orders by Dr. Fitts.

Moreover, Dr. Fitts testified that he was never informed about any of the complaints that plaintiff filed against him with the TDCJ except the one involving the pain medication.  (D.E. 38, Ex. A at ¶ 10).  As to the two complaints plaintiff filed with the Texas Medical Board, Dr. Fitts testified that he received notices of complaints being filed, but that the notices did not affect his medical decisions regarding plaintiff's treatment.  <u>Id.</u>  Plaintiff offers no evidence to refute the sworn testimony by Dr. Fitts that his decision to not prescribe Tylenol #3 was nothing more than his sound medical judgment.  Accordingly, plaintiff fails to establish that, but for his filing complaints, Dr. Fitts would have prescribed the narcotic pain

medication.  Thus, Dr. Fitts is entitled to summary judgment in his favor on this claim.

**C.     Plaintiff's Claim Against Mr. Burgin For Failure To Respond To I-60 Complaints And Grievances Is Without Merit.**

Plaintiff maintains that defendant Burgin violated his constitutional rights when he failed to respond to his I-60 complaints and other grievances.  However, an inmate has no constitutional right to have his grievances investigated or resolved in his favor.  See Geiger v. Jowers, 404 F.3d 371, 373-74 (5th Cir. 2005) (per curiam) (prisoners do not have a federally protected liberty interest in having their grievances resolved to their satisfaction; any alleged due process violation arising from the alleged failure to investigate prisoner grievances is indisputably meritless).  Thus, to the extent plaintiff is attempting to hold Mr. Burgin liable on the grounds that he did not respond to his I-60 complaints or other grievances, plaintiff fails to state a claim upon which relief can be granted.  It is respectfully recommended that Mr. Burgin be granted summary judgment in his favor on this claim.

## VI.  RECOMMENDATION

The summary judgment evidence establishes that plaintiff was seen by medical staff and provided appropriate medications and treatment, thus negating a showing of deliberate indifference.  Banuelos v. McFarland, 41 F.3d 232, 235 (5th

27

Cir. 1995) (per curiam) ("Medical records of sick calls, examinations, diagnoses and medications may rebut an inmate's allegations of deliberate indifference."). Moreover, he fails to establish that Dr. Fitts' decision to not prescribe Tylenol #3 was retaliatory.  Thus, it is respectfully recommended that the motions for summary judgment of Dr. Fitts, (D.E. 38), and Mr. Burgin, (D.E. 39), be granted, and that plaintiff's claims against defendants be dismissed with prejudice.

Respectfully submitted this 14th day of December 2009.

_____
BRIAN  L. OWSLEY
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1)(C) and Article IV, General Order No. 2001-6, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within **FOURTEEN (14) DAYS** after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  Douglass v. United Serv's Auto. Ass'n, 79 F.3d 1415 (5th Cir. 1996) (en banc).